IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
NORTHERN DIVISION

KAMARA HAGIE,                          )
                                       )
        Petitioner,                    )
                                       )
v.                                     )          CIVIL ACTION NO. 09-197-KD-N
                                       )
ERIC HOLDER, et al.,                   )
                                       )
        Respondent.                    )

REPORT AND RECOMMENDATION

This matter is before the court on a petition for habeas relief pursuant to 28 U.S.C.

§2241, filed by Kamara Hagie, who has been detained by the U.S. Department of Homeland

Security (hereinafter *DHS*) (doc. 1), to which the government has filed a response (doc. 8).  In

addition, petitioner has filed a Motion for Immediate Release (doc. 11), which contains a Motion

for Leave to Supplement. These matters have been referred to the undersigned pursuant to  28

U.S.C. § 636(b)(1)(B) and Local Rule 72.1(c) and are now ripe for consideration.

The undersigned recommends that Petitioner's Motion for Immediate Release be

DENIED in light of the determination that his habeas petition is due to be denied, as set forth

below.  Nonetheless, the undersigned considers, in connection with the underlying petition, the

additional arguments petitioner makes in his Motion for Immediate Release.

With regard to the Motion for Leave to Supplement, the undersigned finds no need for

supplementation.  Petitioner seeks to supplement his habeas petition to include Attorney General

Eric Holder and the Warden at the facility where Hagie is currently housed, Joe P. Young, as

respondents.  Petitioner's original petition names Eric Holder; to that extent, petitioner's motion

is MOOT.  With regard to the need to substitute the Warden of the facility where he is currently

housed for the Warden where he was incarcerated at the time he filed the petition, his transfer

from one facility to the other does not require such a substitution.  "[W]hen the Government

moves a habeas petitioner after [he] properly files a petition naming [his] immediate custodian,

the District Court retains jurisdiction and may direct the writ to any respondent within its

jurisdiction who has legal authority to effectuate the prisoner's release."  Rumsfeld v. Padilla,

542 U.S. 426, 441-441(2004); see Alouidor v. Gonzales, 2006 WL 2620264 (N.D.Fla.)(denying

government's motion to transfer case and substitute parties).  It is hereby RECOMMENDED

that the Motion to Leave to Substitute Parties be DENIED.

Background

Petitioner, Kamara Hagie, is an alien awaiting removal from the United States.  He has

filed a habeas corpus petition pursuant to 28 U.S.C. §2241 in which he challenges his detention

pending removal.  In response to the petition, the government offers the affidavit of Detention

and Deportation Officer ("DDO") Dana Day[1] as the evidentiary basis for its statement of facts.

Hagie was ordered removed to both Gambia and Sierra Leone by an Immigration Judge

on October 3, 2008.  On October 7, 2008, U.S. Immigration and Customs Enforcement (ICE)

field officers received an expired Gambian passport under the name Hagie Ndow from

petitioner's family.  While the government asserts that petitioner refused to complete the

documentation for Gambian travel documents (doc. 8, exhibit A), petitioner asserts, in general

---

[1] In her affidavit, Day states that she is a "Detention and Deportation Officer in the
Travel Document Unit (TDU) with the Headquarters' Office of Detention and Removal
Operations (DRO), U.S. Immigration and Customs Enforcement (ICE), within the Department of
Homeland Security in Washington, D.C."  (doc. 8, Exhibit 1).

terms, that he cooperated fully in the process (docs. 1,11).

A travel document request packet was forwarded to the Sierra Leone Consulate on

October 20, 2008, along with national identity papers for Hagie.  Both the Gambia and Sierra

Leone Consulates forwarded the packets to their home countries for verification of nationality.

A travel packet was also sent to the Gambian Consulate on October 27, 2008.  On November 20,

2008, ICE located a Togo national identity card in Petitioner's files, and another travel document

request packet was sent to the Togo Embassy.  On December 11, 2008, a representative of the

Embassy of Togo informed respondents that petitioner Hagie was not a national of Togo.

On January 13, 2009, the Consulate of Sierra Leone scheduled an interview with Hagie.

The Consulate stated that Hagie was not from Sierra Leone.[2]

On March 4, 2009, a representative from the Gambian Embassy stated that Hagie had

finally completed the necessary travel document forms and the packet was sent to Gambia for

final verification.  It is unclear from the record when Hagie completed the documents; he alleges

that he filed all forms given to him by ICE officers and signed all I-229(a) forms.  (Doc. 1)

---

[2]  Ms. Day's affidavit includes the following statements:

11. The Consulate, Mr. Mesali, of the Sierra Leone Embassy scheduled an
interview with Mr. Kamara on January 13,2009. During the interview, Mr.
Kamara made verbal threats toward Mr. Mesali and stated he would kill him if he
issued a TD. At that point, Mr. Mesali stated Mr. Kamara was not from Sierra
Leone.

12. On February 4, 2009, Mr. Mesali confirmed that he was threatened by Mr.
Kamara and stated that Mr. Kamara had fraudulently obtained Sierra Leone travel
documents and that he believes Mr. Kamara to be from Gambia based on the
interview.

The affidavit does not identify the source of knowledge for the statement in paragraph 11
and it is unclear to whom the "confirmation" referred to in paragraph 12 was made.

When ICE representatives checked with the Consulate on May 20, 2009, the Gambian

representative informed ICE that Hagie's travel document request remained pending.

Legal Standard

The seminal case on the issue of the reasonableness of the period of detention following

the 90-day removal period established by statute is Zadvydas v. Davis, 533 U.S. 678 (2001).

The Court described the statutory framework as follows:

> The post-removal-period detention statute is one of a related set of statutes and
> regulations that govern detention during and after removal proceedings. While
> removal proceedings are in progress, most aliens may be released on bond or
> paroled. 66 Stat. 204, as added and amended, 110 Stat. 3009-585, 8 U.S.C. §§
> 1226(a)(2), (c) (1994 ed., Supp. V). After entry of a final removal order and
> during the 90-day removal period, however, aliens must be held in custody. §
> 1231(a)(2). Subsequently, as the post-removal-period statute provides, the
> Government "may" continue to detain an alien who still remains here or release
> that alien under supervision. § 1231(a)(6).

Id. at 683.  The court considered the constitutional claims of two aliens who were being held

"indefinitely" following the 90-day post-removal period.  To answer a "serious doubt" as to the

statute's constitutionality, the court construed the statute to include a reasonableness requirement

for continued detention after the initial 90-day period.  Id. at 689-90.  The Court held that an

additional period of 90 days, so that the total post-removal detention was six months, was

presumptively reasonable.  Id. at 701.

> After this 6-month period, once the alien provides good reason to believe that
> there is no significant likelihood of removal in the reasonably foreseeable future,
> the Government must respond with evidence sufficient to rebut that showing.
> And for detention to remain reasonable, as the period of prior postremoval
> confinement grows, what counts as the "reasonably foreseeable future"
> conversely would have to shrink.  This 6-month presumption, of course, does not
> mean that every alien not removed must be released after six months.  To the
> contrary, an alien may be held in confinement until it has been determined that
> there is no significant likelihood of removal in the reasonably foreseeable future.

<u>Id</u>. at 701.

       Title 8 U.S.C., section 1231 reads, in relevant part, as follows:

       (a) Detention, release, and removal of aliens ordered removed
       (1) Removal period
       (A) In general
       Except as otherwise provided in this section, when an alien is ordered removed,
       the Attorney General shall remove the alien from the United States within a
       period of 90 days (in this section referred to as the "removal period").
       (B) Beginning of period
       The removal period begins on the latest of the following:
       (i) The date the order of removal becomes administratively final.
       (ii) If the removal order is judicially reviewed and if a court orders a stay of the
       removal of the alien, the date of the court's final order.
       (iii) If the alien is detained or confined (except under an immigration process), the
       date the alien is released from detention or confinement.
       (C) Suspension of period
       *The removal period shall be extended beyond a period of 90 days and the alien*
       *may remain in detention during such extended period if the alien fails or refuses*
       *to make timely application in good faith for travel or other documents necessary*
       *to the alien's departure or conspires or acts to prevent the alien's removal subject*
       *to an order of removal.*
       (2) Detention
       During the removal period, the Attorney General shall detain the alien. Under no
       circumstances during the removal period shall the Attorney General release an
       alien who has been found inadmissible under section 1182(a)(2) or 1182(a)(3)(B)
       of this title or deportable under section 1227(a)(2) or 1227(a)(4)(B) of this title.

<u>Id</u>. (emphasis supplied).

       The Eleventh Circuit, in <u>Akinwale v. Ashcroft</u>, 287 F.3d 1050, 1052 (11th Cir. 2002), has

held that the six-month period must have expired at the time the alien files his habeas petition.

<u>Analysis</u>

       In filing a §2241 petition on the basis raised in the instant action, it is petitioner's burden

to offer evidence that there is no reasonable likelihood of removal within the foreseeable future.

On one hand, to meet his burden, the alien is not required "to show the absence of any prospect

of removal-no matter how unlikely or unforeseeable." <u>Zadvydas</u>, 533 U.S. at 702. On the other

hand, the alien does not prevail merely be demonstrating the absence of a repatriation agreement between the U.S. and his home country, where there is evidence that future negotiations between the countries may result in such an agreement. Id.

Hagie has failed to make such a showing or even to allege facts which would be sufficient.  He states, at various points, the conclusion that "[t]here is no likelihood of removal in the foreseeable future to Gambia."  (Doc. 1 at 5, doc. 11 at 2) Nowhere in the record is there any discussion of why Hagie makes such a claim.  In the absence of "good reason," or indeed any reason, "to believe that there is no significant likelihood of removal in the reasonably foreseeable future," Zadvydas, at 701, the government's burden to rebut such showing is not triggered, and no relief is available.  As long as the likelihood exists of removal in the foreseeable future, the government has a valid interest in keeping an alien who is subject to an order of removal in custody.

Conclusion[3]

Based on the foregoing, the undersigned RECOMMENDS that petitioner's habeas petition, his Motion for Immediate Release, and his Motion for Leave to Supplement be DENIED and that this action be DISMISSED without prejudice.


DONE this the 23rd day of July, 2009.

---

[3] In the motion for immediate release, petitioner states that he has not received the government's response to the petition.  The docket sheet reflects that petitioner was served by the government on June 11, 2009.  On June 22, 2009 an order from the court advising petitioner of the transfer of this action to the docket of the undersigned was returned as undeliverable. (doc. 9) On July 9, 2009, petitioner file a Notice of Change of Address.  (doc. 10) The Clerk is DIRECTED to forward to petitioner a copy of Document 8 and Document 9 along with this order at the address given in his July 9, 2009 notice.

/s/ Katherine P. Nelson
UNITED STATES MAGISTRATE JUDGE

MAGISTRATE JUDGE'S EXPLANATION OF PROCEDURAL RIGHTS
AND RESPONSIBILITIES FOLLOWING RECOMMENDATION
AND FINDINGS CONCERNING NEED FOR TRANSCRIPT

1. **Objection**. Any party who objects to this recommendation or anything in it must, within ten days of the date of service of this document, file specific written objections with the clerk of court. Failure to do so will bar a de novo determination by the district judge of anything in the recommendation and will bar an attack, on appeal, of the factual findings of the magistrate judge. See 28 U.S.C. § 636(b)(1)(C); Lewis v. Smith, 855 F.2d 736, 738 (11th Cir. 1988); Nettles v. Wainwright, 677 F.2d 404 (5th Cir. Unit B, 1982)(en banc). The procedure for challenging the findings and recommendations of the magistrate judge is set out in more detail in SD ALA LR 72.4 (June 1, 1997), which provides that:

> A party may object to a recommendation entered by a magistrate judge in a dispositive matter, that is, a matter excepted by 28 U.S.C. § 636(b)(1)(A), by filing a "Statement of Objection to Magistrate Judge's Recommendation" within ten days after being served with a copy of the recommendation, unless a different time is established by order. The statement of objection shall specify those portions of the recommendation to which objection is made and the basis for the objection. The objecting party shall submit to the district judge, at the time of filing the objection, a brief setting forth the party's arguments that the magistrate judge's recommendation should be reviewed de novo and a different disposition made. It is insufficient to submit only a copy of the original brief submitted to the magistrate judge, although a copy of the original brief may be submitted or referred to and incorporated into the brief in support of the objection. Failure to submit a brief in support of the objection may be deemed an abandonment of the objection.

A magistrate judge's recommendation cannot be appealed to a Court of Appeals; only the district judge's order or judgment can be appealed.

2. **Transcript (applicable where proceedings tape recorded)**. Pursuant to 28 U.S.C. §1915 and Fed.R.Civ.P. 72(b), the magistrate judge finds that the tapes and original records in this action are adequate for purposes of review. Any party planning to object to this recommendation, but unable to pay the fee for a transcript, is advised that a judicial determination that transcription is necessary is required before the United States will pay the cost of the transcript.